## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**PENNY ROSE, BELINDA SERRANO,
and REBECCA SERRANO**,

    Plaintiffs,

v.                                      **CIVIL NO. 00-1053 DJS/RLP**

**SAN JUAN COUNTY, NEW MEXICO,** *et al.*,

    Defendants.

## **MEMORANDUM OPINION AND ORDER**

    1. **THIS MATTER** comes before the Court upon Defendants' Motion to Enforce Settlement Agreement Between Plaintiff Penny Rose and Defendants filed June 7, 2001 (Docket No. 24). The parties have consented, pursuant to 28 U.S.C. §636(c) and Fed.R.Civ.P. 73 to the undersigned to conduct any and all proceedings in this case, including the entry of a final judgment.

    This matter is a suit pursuant to 42 U.S.C. §§1983 and 1985 with pendant state tort claims. Plaintiffs assert that Defendant Darrell Whitaker sexually assaulted them while they were incarcerated in the San Juan County Detention Center. Defendant Whitaker was a corrections officer employed at that facility. Plaintiff Penny Rose, against whom Defendants seek to enforce a settlement agreement, asserts that while she was incarcerated at the Detention Center from September 17, 1998 to January 29, 1999, Defendant Whitaker sexually groped her against her will. She further asserts that he struck her genitalia, breasts, and other portions of her body with rubber bands, paperclips, and other items.

Plaintiff's counsel entered into settlement negotiations with the risk management representative for San Juan County, James F. O'Neill. On February 8, 2001, Plaintiff's counsel sent O'Neill a letter rejecting a settlement offer of $25,000 on behalf of Plaintiff Penny Rose and countering that offer with a demand of $30,000. Plaintiff's Response, Exhibit 2. Defendant San Juan County's insurer authorized acceptance of the $30,000 demand to settle on February 26, 2001. Plaintiff's Reply, Exhibit A. On March 1, 2001, Defendants' counsel sent Plaintiff's counsel via facsimile copies of a stipulations of settlement as to the claims of Penny Rose against Defendants, an order of dismissal with prejudice, and a release. At that time, Defendants' counsel requested that Plaintiff's counsel review the documents and provide Plaintiff's social security number for the issuance of the settlement check. Defendants' Reply, Exhibit B. The check was not actually issued and available to Plaintiff until April 23, 2001. Plaintiff's Response, Exhibit 5. On April 11, 2001, Plaintiff's counsel wrote a letter to Defendants' counsel stating that Plaintiff withdrew her agreement to settle her claims for $30,000. Plaintiff's Response, Exhibit 6.

The crux of the dispute between the parties is whether a condition of the settlement was that Plaintiff be provided with the money by the time of her release from jail, which was March 12, 2001. Plaintiff contends that payment of the settlement funds by that date was a condition of the settlement. In other words, Plaintiff asserts that delivery of the settlement funds by the time she was released from incarceration was one of the terms of the settlement contract. Defendant argues that, while Plaintiff made clear that she wanted the money as quickly as possible to ease her transition from incarceration to general society, no exact date was specified by which the money must be delivered. Surprisingly, neither side provided the Court with the parties' stipulation of settlement or any drafts of that document that might exist.

**STANDARD OF LAW**

A trial court has the authority to "enforce a settlement agreement entered into by the litigants while the litigation is pending before it." United States v. Hardage, 982 F.2d 1491, 1496 (10th Cir.1993). Issues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law, see United States v. McCall, 235 F.3d 1211, 1215 (10th Cir. 2000), even when there are federal causes of action in the underlying litigation. See United Commercial Ins. Serv., Inc. v. Paymaster Corp., 962 F.2d 853, 856 (9th Cir.1992); but see, Heuser v. Kephart, 215 F.3d 1186, 1190-91 (10th Cir. 2000) (whether state or federal law governs the enforcement of settlement agreements is an undecided question in this Circuit, federal common law governs over settlement agreements in Title VII cases); see also Snider v. Circle K Corp., 923 F.2d 1404, 1407 (10th Cir.1991) (holding settlement agreements in Title VII cases are governed by federal common law because the agreements and the statute are "inextricably linked"). This Court will apply New Mexico contract law in this instance.

New Mexico law favors the settlement of disputed claims. See Gonzales v. Atnip, 692 P.2d 1343, 1344 (N.M.Ct.App.1984). Absent proof of a violation of the statute of frauds or other valid defense, an oral settlement is as enforceable as a written one. See Rojo v. Loeper Landscaping, Inc., 759 P.2d 194, 196 (N.M.1988). "A party seeking relief from ... a settlement has the burden of persuasion." Gonzales, 692 P.2d at 1344.

Plaintiff cannot meet her burden in this instance. The February 8, 2001 letter from her attorney to O'Neill conveys the offer to settle the case for $30,000. Although the reason for the settlement demand is given as her impending release from prison, at no point is a deadline for delivery of the money given as a condition of the settlement. Plaintiff's Response, Exhibit 2. Plaintiff asserts that her

3

counsel told Defendant's representative, O'Neill, that Plaintiff required prompt delivery of the check. Plaintiff's Response, Exhibit 1, Affidavit of Joe M. Romero, Esq., ¶5. Romero states that Plaintiff agreed to settle her case based upon the expected receipt of the check within four weeks of February 9, 2001. Id. at ¶6. The problem with that position is that once Defendant agreed to settle Plaintiff's claims for her counter-offer of $30,000, the contract was complete.

Plaintiff argues that a promise to make the settlement funds available "as soon as possible" would have been an illusory promise and insufficient consideration for her promise to settle. However, that argument ignores the fact that she was receiving a significant sum of cash in return for dismissing her claims. Nowhere in the materials provided to the Court did Plaintiff indicate that she would not settle absent receipt of the funds by a date certain. Instead, she indicated the need for funds due to an imminent release from jail. That need is presumably ongoing and the statement of it cannot be stretched to embody a condition of the settlement.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Enforce Settlement Agreement Between Plaintiff Penny Rose and Defendants is granted.

**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**